IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 10-606 |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| BRIAN GELLER | : | CIVIL ACTION NO. 11-7340 |

**MEMORANDUM**

Padova, J.                                                                                                                                                                                                                  February 7, 2012

Defendant Brian Geller has filed a *pro se* Motion pursuant to 28 U.S.C. § 2255 challenging his sentence of 69 months' imprisonment. The Government has filed a Motion to Dismiss Geller's § 2255 Motion. For the following reasons, we grant the Government's Motion and dismiss Geller's § 2255 Motion.

I.     **BACKGROUND**

Geller was employed by JP Morgan Chase in its private banking services division. From June 2005 through April 2009, he used his position to steal more than $1.8 million, by transferring the money from JP Morgan's accounts into his or a family member's personal accounts. On January 10, 2011, he pled guilty to bank fraud in violation of 18 U.S.C. § 1344; two counts of making a monetary transaction of over $10,000 with criminal proceeds in violation of 18 U.S.C. § 1957; and one count of tax evasion in violation of 26 U.S.C. § 7201. As part of his Guilty Plea Agreement; he agreed to waive his right to appeal and to collaterally attack his conviction and sentence. On May 2, 2011, we sentenced Geller to 69 months' imprisonment, varying downward from his Sentencing Guidelines range of 78 to 97 months.

Geller raises three challenges to the length of his sentence: 1) that there is a discrepancy between the sentence imposed and what we intended to impose; 2) his sentence violates his constitutional right to equal protection because he is ineligible for any sentence reduction based on

participation in a substance abuse program; and 3) due to prison overcrowding, he is unable to get the rehabilitative help he needs.

## II. LEGAL STANDARD

The Government has moved to dismiss Geller's § 2255 Motion on the ground that Geller waived his right to collaterally attack his sentence in his Guilty Plea Agreement. The United States Court of Appeals for the Third Circuit has held that a defendant's waiver of appellate or collateral attack rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008)); see also United States v. Shedrick, 493 F.3d 292, 297-98 (3d Cir. 2007); United States v. Khattak, 273 F.3d 557, 562-63 (3d Cir. 2001).

## III. DISCUSSION

### A. Knowing and Voluntary Waiver

We first "consider whether there is record evidence that [Geller] knowingly and voluntarily signed the waiver." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007). In making this determination, we look to the language of the waiver and to the guilty plea colloquy. See United States v. Mabry, 536 F.3d 231, 238 (3d Cir. 2008) (citing Gwinnett, 483 F.3d at 203-04).

The language of the waiver in Geller's Guilty Plea Agreement is clear: "the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter . . . under . . . 28 U.S.C. § 2255." (Guilty Plea Agreement ¶ 13.) The Guilty Plea Agreement also states that defendant "acknowledges his waiver of rights," (Id. ¶ 1), and that "the defendant and [his] lawyer have fully discussed this plea agreement." (Id. ¶ 15).

Prior to accepting Geller's guilty plea, we conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11, which provides as follows:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . .
>
> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b)(1); see also Gwinnett, 483 F.3d at 204. During the plea colloquy, we confirmed that Geller had read the Guilty Plea Agreement and discussed it completely with his attorney. (1/10/11 Hr'g Tr. at 10.) We asked Geller whether he had been threatened, coerced, or forced into pleading guilty; he answered that he had not been. (Id. at 16, 32.) Moreover, the Government explained that the Guilty Plea Agreement contained a waiver of Geller's right to collaterally attack his conviction and sentence, which Geller stated he understood. (Id. at 13, 14.) We also conducted the following colloquy with Geller with respect to the waiver:

> THE COURT: Now, if you went to trial on a not-guilty plea and at that trial you were actually found guilty, then after that trial you would be able to appeal the guilty verdict in an appellate court; a lawyer could represent you in that appeal and the appellate court might throw out the conviction. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Now, by pleading guilty, you are giving up your right to appeal from any conviction after trial, because there will be no trial. Ordinarily, the only appeal from a guilty plea that you would have would be if I imposed an illegal sentence, or if there are any errors in this proceeding or the sentencing proceeding. You have, however, entered into a plea agreement which does contain what we refer to as an appellate waiver provision which is more narrow, generally allowing a defense appeal, that means an appeal by you,

3

> only where the Government appeals, if that happens; if the Court imposes a sentence in excess of the statutory maximum; and/or the Court imposes an upward departure or variance from the advisory Guideline range. Do you understand those things?
>
> DEFENDANT: Yes, your Honor.

(Id. at 19-20.) Following our colloquy with Geller, we found that he was competent to plead; that his plea was voluntary and not the result of force, threats, or promises apart from the Guilty Plea Agreement; and that he understood the charges against him, his legal rights, and the maximum possible penalties he faced. (Id. at 35-36.)

In sum, the Guilty Plea Agreement and our colloquy with Geller demonstrate that he was fully informed of his rights, the Government's obligations, and the nature of the appellate and collateral attack waiver. Furthermore, Geller indicated by both his execution of the Guilty Plea Agreement and his sworn responses to our questions, that he had consulted with his attorney and understood the waiver. Therefore, we find that Geller knowingly and voluntarily entered into the appellate and collateral attack waiver contained in the Guilty Plea Agreement.

B. Exceptions to the Waiver

Next we consider whether any specific exception set forth in the waiver provision applies. The waiver provision of Geller's Guilty Plea Agreement contains the following limitations and exceptions:

> 13. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.
>
>     a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

  b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claim that:

    (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 7 above;

    (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

    (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court. If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

(Guilty Plea Agreement ¶ 13.) Geller has made no argument that any of these exceptions applies here, and we can perceive no basis for such an argument. Geller does not assert any non-waiveable constitutional claim, the Government has not appealed, and Geller is not filing a direct appeal. Moreover, we did not sentence Geller in excess of the statutory maximum, depart upward pursuant to the Sentencing Guidelines, or impose a sentence above the final Sentencing Guideline range. Accordingly, we conclude that no specific exception contained in the waiver provision applies.

  C. <u>Miscarriage of Justice</u>

  Finally, we must determine whether enforcing the waiver would be a miscarriage of justice. The circumstances in which an error amounts to a miscarriage of justice are "unusual," Khattak, 273 F.3d at 562, and the miscarriage of justice exception must be "'applied sparingly and without undue

generosity.'" United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001). When a defendant challenges the length of a sentence, it is "a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice." Jackson, 523 F.3d at 244. To evaluate whether enforcement of a waiver would result in a miscarriage of justice, we consider: the clarity of the error, the gravity of the error, the character of the error, "'the impact of the error on the defendant, the impact of correcting the error on the Government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (quoting Teeter, 257 F.3d at 25-26).

Geller's first argument is that there was a discrepancy between the sentence we imposed and what we announced at sentencing we would impose. Geller claims that we told him, at sentencing, that his imprisonment would end by the time his children began kindergarten, but in fact he will not be released until the next year. However, at the sentencing hearing, we informed Geller that his sentence "is going to get you back to the house about when [your children are] ready to go to *first grade*." (5/2/11 Hr'g Tr. at 45 (emphasis added).) Thus, we did not commit an error in imposing Geller's sentence and we conclude that the enforcement of the waiver as to this claim would not result in a miscarriage of justice.

Second, Geller argues that he is entitled to a reduction in the length of his sentence because there is an unwarranted disparity between his sentence and that of prisoners who are eligible for treatment programs, such as the Residential Drug Treatment Program (RDAP), which if completed make a prisoner eligible for a sentence reduction. Such disparities, however, are "inherent in the legislative program" establishing the authority of the Bureau of Prisons to grant such reductions, and thus are not grounds for a challenge to a sentence. See United States v. Smith, 474 F.3d 888, 895

6

(6th Cir. 2007) abrogated on other grounds by Gall v. United States, 552 U.S. 38 (2007) (rejecting argument that the defendant's sentence would create an unwarranted sentence disparity because he was ineligible to participate in RDAP). Accordingly, we find that we did not create an unwarranted disparity in imposing Geller's sentence and we conclude that enforcement of the waiver as to this claim would not result in a miscarriage of justice.

Third, Geller argues that, because the prisons are overcrowded, he cannot get the rehabilitation help he needs in prison, and thus we should shorten his sentence so he can begin rehabilitating himself sooner at home. At sentencing, we expressly considered Geller's need for rehabilitation, and based his sentence of 69 months' imprisonment, in part, on that need, as we are required under 18 U.S.C. § 3553(a). (See 5/2/11 Hr'g Tr. at 45.) We did not, however, expressly discuss whether prison overcrowding would hamper his ability to rehabilitate himself. Assuming, arguendo, that our failure to consider the impact of prison overcrowding was an error, Geller did not raise this issue at sentencing, and thus acquiesced in the error. We also find that the gravity of this error and its effect on Geller are minimal, because Geller's need for rehabilitation was only one factor in our sentence, and we also based his sentence on the nature and circumstances of the offense, his history and characteristics, and the need for general deterrence. (Id. at 12-13, 52-53.) Accordingly, we conclude that the enforcement of the waiver as to this claim would not result in a miscarriage of justice.

After considering Geller's three claims for relief, and the factors listed in Khattak, we conclude that enforcement of Geller's waiver of his right to bring a motion under 28 U.S.C. § 2255 will not result in a miscarriage of justice. We thus grant the Government's Motion and dismiss Geller's § 2255 Motion.

## IV. CONCLUSION

For the reasons stated above, we grant the Government's Motion to Dismiss, and dismiss Geller's Motion under 28 U.S.C. § 2255. An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.